IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

---

**GRACE REQUIRES UNDERSTANDING, INC.**,

        Plaintiff,

v.                                                                                            No. CIV 10-528 BB/CG

**MIKKI ROGERS, in her official capacity as Director, Developmental Services Division, New Mexico Department of Health; ALFREDO VIGIL, in his official capacity as Secretary of the New Mexico Department of Health; KATHRYN FALLS, in her official capacity as Secretary of the New Mexico Human Services Department; GARY KING, in his official capacity as Attorney General of New Mexico; and SUSANA MARTINEZ, in her official capacity as Governor of the State of New Mexico**,

        Defendants.

### MEMORANDUM OPINION

THIS MATTER is before the Court for consideration of several motions: a motion for joinder filed by Plaintiff [Doc. 87]; a motion to reconsider, also filed by Plaintiff [Doc. 71]; and a motion to dismiss filed by Defendants [Doc. 7]. As discussed below, Plaintiff's motions will both be denied, and Defendants' motion will be granted. As a result, this case will be dismissed, with the proviso that Plaintiff's state-law claims will be dismissed without prejudice.

**Procedural History**

This case generally involves the federal and state Medicaid program and payments made under that program to family caretakers for disabled persons who are living at home rather than in

some type of institution or medical facility.  The procedural history of this case is complicated, which partly explains why the Court is only now ruling on the motion to dismiss even though it was filed over a year ago.  On May 31, 2010, Plaintiff filed a motion for preliminary injunction, permanent injunction, and declaratory relief [Doc. 1], which has been treated as a complaint by all parties.  Defendants quickly filed a motion to dismiss or, in the alternative for summary judgment, on June 29, 2010 [Doc. 7].  Plaintiff failed to timely file a response to this motion, but was allowed to file an untimely response by order of the Court [Doc. 31].  Plaintiff then filed a motion to amend or correct the complaint, and a motion to correct that motion, both in October 2010 [Docs. 32, 38]. A hearing was held on this motion on December 13, 2010.  At that hearing Plaintiff essentially abandoned its motion to amend the complaint, with counsel stating that a new amended complaint and a motion for class certification would be necessary.  The Court allowed Plaintiff to file an amended complaint, and directed that it be filed within ten days of the date of the hearing.  [Doc. 53, minutes of hearing]  No amended complaint was forthcoming by December 23, nor at any time in December, nor in January 2011.  Finally, on February 4, 2011, Plaintiff filed a motion for an extension of time in which to file an amended complaint, and two days later filed a second motion to amend the complaint [Docs. 61, 62]  The Court denied both of these motions [Docs. 63, 67], which triggered Plaintiff's motion for reconsideration, filed on March 17, 2011 [Doc. 71]. Subsequently, on April 27, Plaintiff filed a motion to join several federal officials as Defendants in this case [Doc. 87].  At this point the Court is ready to determine whether any parties should be added to the case, as well as whether Plaintiff has stated a valid federal cause of action.

**Motion for Joinder**

Plaintiff wishes to add three defendants in their official capacities:  Kathleen Sebelius, Secretary of the United States Department of Health and Human Services ("HHS"); Donald M. Berwick, M.D., Administrator of the Centers for Medicare and Medicaid Services ("CMS"); and

Marjorie McColl Petty, Regional Director of Region VI of CMS.  Plaintiff's only argument in support of joinder is that Plaintiff was informed by an employee of CMS that CMS agrees with a legal position taken by Defendants in this case.  However, Plaintiff has failed to identify a viable cause of action against any of these individuals or the agencies they represent.  A lawsuit against a government employee in his or her individual capacity is tantamount to a lawsuit against the agency itself.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *American Policyholders Ins. Co. v. Nyacol Prods., Inc.*, 989 F.2d 1256, 1259-60 (1st Cir. 1993).  It was therefore incumbent on Plaintiff to identify, in the motion for joinder, a cause of action that could be maintained against HHS or CMS, in order to clear the first hurdle posed by the joinder issue; otherwise allowing joinder would be a futile act.  *See Pickens v. Fed. Bureau of Prisons,* 1997 WL 271326 (10th Cir. 1997, unpublished) (denial of  motion for joinder of defendants on the basis of futility was not an abuse of discretion where complaint failed to state cognizable claim against them).

      Plaintiff's case is a challenge to a rule imposed by Defendants, which requires family caretakers to give up $5.00 per hour of their monthly stipend, for each hour of respite care they use during the month.[1]  Plaintiff's central challenge to the rule is an allegation that Defendants did not adequately publish advance notice of the proposed rule, and allow public comment before the $5.00-per-hour charge, however it is characterized, began to be imposed on the family caretakers.  Plaintiff relies in part on a provision of the Medicaid Act which mandates that a state Medicaid plan must contain a public process for determination of rates of payment for hospital services, nursing facility services, and services of intermediate care facilities for the mentally retarded ("ICFMR"). 42 U.S.C.

---

[1] Respite care, as the parties are well aware, is essentially substitute care; an outside caretaker is hired by Plaintiff to come into the home and replace the family caretaker for a certain amount of time, to give the family caretaker a break from his or her caretaker responsibilities.  Plaintiff characterizes the $5.00-per-hour requirement as a "penalty" for using respite care, while Defendants say it simply avoids double payment, contending that family caretakers and respite providers cannot both be paid for the same caretaking time periods.

§ 1396a(a)(13)(A). Defendants have maintained, among other things, that this public-process provision applies only to the facilities specifically mentioned in the statute -- hospitals, nursing facilities, and ICFMRs. In the reply brief supporting the motion for joinder Plaintiff indicates that an attorney for CMS informed Plaintiff that the public-process provision does not apply to the family-caretaker program. This is the only event Plaintiff identifies as triggering the motion for joinder. In other words, Plaintiff apparently seeks to join CMS and HHS, two federal agencies, as Defendants in this lawsuit simply because they have expressed agreement with a legal position taken by Defendants in this case. This is clearly not how the legal system works.

It is axiomatic that in order to be haled into court, a person or entity must have taken some action, or engaged in some omission, which allegedly contravenes a legal standard and for which it is somehow legally responsible. Plaintiff has identified no such action or omission on the part of CMS or HHS in this case. There has been no allegation that CMS or HHS had any legal responsibility for Defendants' alleged failure to provide adequate public notice prior to imposing the $5.00-per-hour charge. Plaintiff has identified no statutory or constitutional basis for bringing a lawsuit against CMS or HHS. The Court notes that Plaintiff seeks to maintain its case against Defendants under 42 U.S.C. § 1983, as well as a New Mexico state law. Section 1983, of course, does not apply to federal agencies; it is a tool for enforcing federal constitutional and statutory law upon state actors. *See Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005).[2] Furthermore, the Court can envision no circumstance in which a federal agency could be brought into court to answer for a state agency's alleged violations of a state law. It is not up to the Court to cast about to try to divine, if possible, how HHS or CMS might be proper Defendants in

---

[2]To the extent Plaintiff might argue that a Bivens action, which is similar to a § 1983 action, could be maintained, the Court notes that such an action may only be brought against federal agents individually, not against federal agencies or federal officials acting solely in their official capacity. *See FDIC v. Meyer*, 510 U.S. 471, 483-86 (1994).

this lawsuit. *See Glatt v. Chicago Park Dist.*, 847 F.Supp. 101, 103 (N.D. Ill. 1994). Instead, it was Plaintiff's responsibility to determine that and inform the Court of supporting facts. Since Plaintiff has failed to do so, the Court exercises its discretion under the federal rules of civil procedure, and denies Plaintiff's request to join HHS and CMS as parties to this case.[3] The Court notes that Plaintiff will not be unduly prejudiced by this denial, as Plaintiff can maintain an independent lawsuit against HHS or CMS, or both, if there are facts and law justifying, in good faith, such an action.

**Motion to Reconsider**

The significant facts with respect to this motion are as follows: (1) Plaintiff's oral motion to submit a revised amended complaint was granted on December 13, 2010, with the proviso that this amended complaint was to be filed within 10 days of that date; (2) Plaintiff did not meet that deadline and did not contact the Court to request an extension of the deadline; and (3) Plaintiff said nothing to the Court concerning the amended complaint until early February 2011, over a month after the deadline had expired. Plaintiff's only explanation for the delay is that events continued to occur that might be significant for the case; Plaintiff has never, however, explained why there was no attempt to contact the Court and obtain an extension of the ten-day deadline. Plaintiff cannot simply ignore an explicit deadline established by the Court, provide no explanation for its action, and expect the Court to look favorably upon the request to amend, especially when Plaintiff has repeatedly shown an unwillingness or inability to comply with the procedural requirements of

---

[3] Plaintiff stated, in its reply brief, that a motion to amend the complaint was being filed contemporaneously with the reply brief. [Doc. 100, pp. 1, 2] If such a motion had indeed been filed, it might have helped illuminate the causes of action Plaintiff believes could be maintained against HHS or CMS. However, no such motion was filed, or has been filed to date. This is simply another example of the procedural shortcomings which have hampered Plaintiff's presentation of its case as well as this Court's consideration of same. More of these shortcomings will be discussed below.

practice in this Court.  *See Docs. 59, 60, 89* (discussing failures of Plaintiff's counsel to comply with time limitations and other requirements of local rules).

In addition to the issue of Plaintiff's disregard for the explicit deadline established by this Court, the substance of Plaintiff's attempt to amend the complaint also gives the Court pause. Plaintiff wishes to add as plaintiffs certain individual parties, both family caretakers and recipients of such care.  Significantly, however, Plaintiff asks that these individuals be denominated as class representatives, and that the claims be presented in class-action form. [Doc. 62, Exh. 1] Although Defendants have not directly addressed this aspect of the motion to amend, this Court has an independent obligation to decide whether a lawsuit should be maintained as a class action.  *See McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981); *Horn v. Associated Wholesale Grocers, Inc.,* 555 F.2d 270, 274 (10th Cir. 1977).  One requirement for a class action is that the named parties will adequately protect the interests of the class, and in making that determination the Court may take into account the question of counsel's ability to comply with the stringent requirements of class-action practice.  *See, e.g., McGowan.*  While Plaintiff's counsel appears to have some knowledge of the field of Medicaid law, her many failures to meet time deadlines illustrate that she has not exhibited the organizational ability necessary to properly handle the procedural issues that inevitably arise in any class action.  For this reason, the motion to amend to allow this case to proceed as a class action will be denied on the merits, regardless of the procedural problems discussed in the preceding paragraph.

Due to Plaintiff's procedural failings as well as the Court's unwillingness to allow this action to proceed as a class action, the motion for reconsideration will be denied and the Court's denial of Plaintiff's belated motion to amend will stand.  There is a single exception to this ruling, which will be discussed below.

**Motion to Dismiss --Procedural Issues**

Defendants have raised a number of arguments in support of their motion to dismiss, including lack of standing, laches, expiration of the statute of limitations, sovereign immunity, and failure to state a claim upon which relief can be granted. Some of these issues depend on resolution of factual questions and on review of materials outside the four corners of the complaint. However, in considering a motion to dismiss, the Court must accept the factual allegations in the complaint as true and resolve all reasonable inferences in Plaintiff's favor. *See Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126-27 (10th Cir.1998). After such analysis, dismissal is not appropriate unless it appears beyond doubt that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citations omitted). For this reason, the Court will not address the issues that require resolution of factual matters. Instead, the Court will focus on the arguments concerning Plaintiff's failure to state a viable cause of action as a matter of law.

The Court recognizes that standing is a threshold jurisdictional issue that normally should be resolved prior to an analysis of the merits of a case. *See In re Yellow Cab Co-op. Ass'n*, 132 F.3d 591, 594 (10th Cir. 1997); *Green v. United States*, 2011 WL 2621003 (10th Cir. 2011). Defendants' standing argument, like many of their arguments, depends on resolution of factual questions. Defendants contend the $5.00 per hour respite charge is applied to family caretakers, not Plaintiff; on the other hand, in Plaintiff's complaint there is an extended explanation of how Plaintiff loses money on each hour of respite care provided, due to the $5.00 charge. There is authority for the proposition that, where factual issues exist regarding a plaintiff's standing, those issues should be resolved before any decision is made as to the merits of a claim. *See, e.g., Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 87-89 (2d Cir. 2006). In this case such a procedure would require submission of affidavits, or deposition testimony, or even a live evidentiary hearing before the Court. *See id.* However, Plaintiff has several times attempted to add as Plaintiffs

7

parties who indisputably have standing to challenge the $5.00 per hour respite charge, as they are either family caretakers or care receivers who are directly affected by the charge. [Docs. 32, 62] The Court denied the first motion as moot, since Plaintiff abandoned it at the December 2010 hearing; denied the second due to Plaintiff's lack of adequate explanation for its failure to meet the Court's deadline; and has denied the motion for reconsideration at least in part because the Court is unwilling to allow this case to proceed as a class action. It is now clear to the Court, however, that there needs to be a party who has unquestionable standing, if for no other reason than to allow consideration of any appeal that might be brought following this Court's decision. If the Court were to engage in fact-finding and decide that Plaintiff GRU does not have standing, the Court would then be compelled to grant Plaintiff's motion to amend to the limited extent of adding the putative individual Plaintiffs not as representatives of a class, but as parties advancing their own individual claims. Instead of following this circuitous route, the Court will simply add the individual Plaintiffs as parties at this point, but not in any class-representative capacity. To that extent only, the Court will reconsider its prior rulings concerning Plaintiff's motions to amend and will grant the later of the two motions, adding James W. Harkness and Ian D. Harkness as Plaintiffs in this matter. For ease of reference, however, the Court will continue to refer to "Plaintiff" in the singular.

**Motion to Dismiss -- Merits**

Plaintiff's federal-law claims are grounded in the contention that Defendants violated the public-participation provisions of the Medicaid Act, by failing to adequately provide notice and an opportunity to be heard prior to imposing the $5.00-per-hour charge for respite care. Plaintiff does not proceed directly under the Medicaid Act, but uses the vehicle of 42 U.S.C. § 1983 to attempt to enforce the provisions of that Act. Defendants argue strenuously that the provisions of the Medicaid Act relied on by Plaintiff cannot be enforced through a § 1983 lawsuit. As discussed below, the

Court finds this issue dispositive of Plaintiff's federal causes of action and therefore need not discuss the other arguments raised by the parties.[4]

42 U.S.C. § 1396a contains many subsections, and courts have held that some of these subsections do create private federal rights enforceable under § 1983, while others do not. *See, e.g., Hobbs v. Zenderman*, 579 F.3d 1171, 1181-82 (holding that 42 U.S.C. §§ 1396a(a)(10)(C)(i) and 1396a(a)(17) do not create rights that may be enforced under § 1983, while recognizing that a number of courts have held that § 1396a(a)(10)(A)(i) does so). It is therefore necessary to identify the specific subsections on which Plaintiff relies, in order to determine whether those specific subsections grant Plaintiff a private right that may be enforced under § 1983.

One Medicaid Act subsection relied on by Plaintiff in the briefs is 42 U.S.C. §1396a(a)(30)(A), which requires generally that a state Medicaid plan must create payment schedules that will ensure a relatively equal distribution of care and services to all Medicaid patients in a certain geographic area. This provision need not detain us for long. Five years ago the Tenth Circuit held that this provision identifies no discrete class of beneficiaries, and therefore does not create a federal right enforceable under § 1983. *See Mandy R. ex rel. Mr. and Mrs. Owens*, 464 F.3d 1139, 1148 (10th Cir. 2006). That decision is binding on this Court. *See Dobbs v. Anthem Blue Cross and Blue Shield,* 600 F.3d 1275, 1279 (10th Cir. 2010).

The other Medicaid Act provision, and the one on which Plaintiff relies most heavily, is 42 U.S.C. § 1396a(a)(13)(A). As noted above, this provision requires a state Medicaid plan to provide for a public process for "determination of rates of payment under the plan for hospital services,

---

[4]The Court notes the Supreme Court has held that, while the question of whether a statutory violation may be enforced through § 1983 is a different inquiry than whether a private right of action can be implied from a particular statute, the two inquiries overlap in one meaningful respect: in either case the threshold issue is whether Congress intended to create a federal right. *See Gonzaga University v. Doe*, 536 U.S. 273, 283-84 (2002). Therefore, the analysis and result would be the same if Plaintiff attempted to proceed directly under the Medicaid Act rather than under § 1983.

nursing facility services, and services of intermediate care facilities for the mentally retarded..." *Id.* The public process must include publication of proposed rates and the justifications for those rates, as well as a reasonable opportunity for public comment on the proposed rates. *Id.* Plaintiff maintains this provision was violated by Defendants because they did not provide a reasonable opportunity for public comment before they imposed the $5.00-per-hour reduction for each hour of respite care used. Defendants maintain this provision applies only to hospitals, nursing facilities, and intermediate care facilities for the mentally retarded ("ICFMR"). Plaintiff, on the other hand, essentially contends its members are providing the same services as would be provided in a hospital or nursing facility or ICFMR, and therefore the notice-and-comment provisions of §1396a(a)(13)(A) are applicable to the rates paid to its members.

An argument virtually indistinguishable from Plaintiff's argument has been addressed by the First Circuit, in *Long Term Care Pharmacy Alliance v. Ferguson*, 362 F.3d 50 (1st Cir. 2004). In that case a group of pharmacies which supplied prescription drugs to nursing facilities argued as follows: (1) provision of pharmaceuticals to patients is a function performed by nursing facilities; (2) the pharmacies were performing that function on behalf of nursing facilities; (3) therefore, the pharmacies were entitled to the same notice-and-comment rights under § 1396a(a)(13)(A) as nursing facilities. The First Circuit rejected that argument, holding that the issue of "who" performs the service at issue is as important as "what" services are being provided. *Id.*, 362 F.3d at 55. In short, the *Ferguson* court held that § 1396a(a)(13)(A) does provide a right of action, but only to three specific types of facilities: hospitals, nursing facilities, and ICFMRs. *Id.* at 55-56. This opinion is persuasive, since it comports with the plain language of the Medicaid Act, and the Court will follow it. The Court therefore holds that Plaintiff has no federal right under § 1396a(a)(13)(A) that is enforceable under § 1983.

The Court notes Plaintiff has in passing mentioned two Constitutional provisions, the due-process clause and the equal-protection clause, in support of its claims.  Any argument that Plaintiff might intend to be based on these provisions has not been developed sufficiently to survive the motion to dismiss.  For example, the equal-protection issue was mentioned in a few sentences in one brief, when Plaintiff's counsel opined that if the notice-and-comment provision of § 1396a(a)(13)(A) was applied only to the named types of facilities and not to other care providers, a "strong" equal-protection issue would be presented.   Plaintiff has not explained the basis of this "strong" equal-protection claim, other than to state that it is "unlikely" Congress intended to limit the notice-and-comment opportunity in such manner.  In any event, the First Circuit in the *Long Term Care* case provided a plausible explanation for why Congress did indeed have a sound reason for differentiating between the three named types of facilities and other service providers.  As the First Circuit explained, Congress could have determined that hospitals, nursing facilities, and ICFMRs have sunk-cost structures that render them "especially vulnerable to slow destruction by long-term underfunding..." *Long Term Care Pharmacy Alliance v. Ferguson, supra,* 362 F.3d at 56.  This explanation addresses an equal-protection claim on two prongs: first, it demonstrates that other service providers are not similarly situated to the three types of facilities specified in the statute; and second, it provides a rational basis for distinguishing between the named types of facilities and other service providers such as Plaintiff.  *See, e.g., Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1257 (10th Cir. 2009) (equal-protection claim failed  because plaintiff did not show how he had been intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment).  Plaintiff has not submitted any argument as to either the similarly-situated aspect of the equal-protection test, or the rational-basis prong of that test.  Therefore, this constitutional claim must fail.

Similarly, Plaintiff's due-process argument was not raised in the original pleading filed in this case -- the motion for preliminary injunction, declaratory judgment, and permanent injunctive relief [Doc. 1]. Subsequently, in a brief filed in support of that motion, Plaintiff did spend two paragraphs discussing due-process principles. However, Plaintiff's argument, without explanation, merely assumes Plaintiff's interest in this matter is a fundamental liberty or property interest. [Doc. 51, p. 18] Plaintiff does not explain why this is so, which is especially troubling since Plaintiff's position with respect to Defendants is admittedly that of a contractor -- Plaintiff and its members enter into contracts with Defendants under which Plaintiff and its members provide services and in return receive reimbursement. At bottom, Plaintiff's complaint with the $5.00 per hour respite charge is that it lessens the value of these contracts; Plaintiff and its members receive less money from Defendants if they utilize the respite care that is available.[5] However, it is well-settled that not every contract with a state entity gives rise to a property interest protected by the Due Process Clause. *See, e.g., Omni Behavioral Health v. Miller*, 285 F.3d 646, 652-53 (8th Cir. 2002) ("If every disgruntled contractor were allowed to allege a constitutional violation ... the federal courts would be overrun with state law contract claims."). According to *Omni*, contracts that give rise to protected property interests generally fall into two categories: first, where the contract confers a preferred status such as extreme dependency (e.g., welfare benefits), permanence (e.g., tenure), or perhaps both (e.g., social security benefits); second, where the contract itself includes a provision stating that the contract can be terminated, or the terms of the contract altered, only for good cause shown. *Id.* Plaintiff has presented no argument tending to show that its contractual rights rise to

---

[5]The Court recognizes that Plaintiff posits a parade of horribles that will follow if the respite charge is imposed: service providers will be unwilling to use respite care, which will lead them to suffer physical and psychological harm, which will lead to substandard care for the disabled individuals they serve. All of these potential harms, however, flow from the fact that the value of the contractual benefits received from Defendants is potentially lessened by the respite-care charge.

the level of a property interest protected by the Due Process Clause. Absent such an argument, it is simply not sufficient to baldly assert that fundamental liberty or property interests have been impaired in this case.

### State-Law Claims

Although these claims were not mentioned in the original pleading, Plaintiff has attempted throughout this litigation to assert state-law claims under New Mexico's Open Meetings Act and State Rules Act, as well as the state version of the APA. As discussed above, all of the federal claims Plaintiff has raised will be dismissed. When that occurs, the Tenth Circuit has directed that the preferred course of action is to dismiss any remaining state-law claims without prejudice, so they may be pursued in state court if warranted by the facts and law. *See Brooks v. Gaenzle,* 614 F.3d 1213, 1229-30 (10th Cir. 2010). The Court will follow that course in this case and any state-law claims Plaintiff has attempted to raise will be dismissed without prejudice.

### Conclusion

Based on the foregoing, Plaintiff's federal claims will be dismissed with prejudice, Plaintiff's motions will be decided as discussed above, and Plaintiff's state-law claims will be dismissed without prejudice.

_____
**BRUCE D. BLACK**
United States District Judge